**50 CCPA**

**GENERAL FOODS CORPORATION,**
Appellant,

v.

**E–Z SPUDS, INC., Appellee.**

**Patent Appeal No. 6861.**

United States Court of Customs
and Patent Appeals.

Jan. 16, 1963.

Gordon R. Brown, Frederick F. Mack, White Plains, N. Y., Francis C. Browne, Washington, D. C., for appellant.

John B. Hosty, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Judges.

WORLEY, Chief Judge.

E–Z Spuds, Inc., seeks registration of "E–Z KRINKLES"[1] as a trademark for raw potatoes which have been peeled, sliced, and preserved. General Foods Corporation opposes on prior registrations of "KRINKLE" for a food made of corn, sugar and salt,[2] "SUGAR KRINKLES"[3] and "SUGAR RICE KRINKLES"[4] for cereal breakfast foods, and

1. The application, Serial No. 44,887, filed January 29, 1958, states:

Applicant disclaims the word "KRINKLES" apart from the mark shown.

2. Reg. No. 82,436, registered June 27, 1911, to a predecessor; twice renewed.

3. Reg. No. 607,393, registered June 14, 1955.

4. Reg. No. 664,134, registered July 8, 1958.

on asserted prior use of "KRINKLES" and "SUGAR COATED RICE KRINKLES" on other breakfast foods.

The Trademark Trial and Appeal Board found that opposer was a manufacturer of a long line of grocery items including canned, mashed and sliced potatoes, frozen french fried potatoes, gelatin, dog foods, cocoa, baking powder, dry cereals, syrup, coffee and tea which it sells under different brand names through grocery wholesalers to the retail trade. The board found also that the opposer has since about 1949 used the word "KRINKLES" at various times alone or as a component of several trademarks for dry rice cereal. Sales of those cereal products bearing the term "KRINKLES" from 1951 through 1960 have amounted to more than $20,000,000. During the same period of time over $6,000,000 was spent by opposer for advertising its "KRINKLES" product. In addition, the board relies on testimony to the effect that opposer uses the expression "crinkle cut" in connection with its "Bird's Eye" brand of frozen french fried potatoes to refer to the cut and appearance thereof.

In dismissing the opposition, the board stated:

" The specimen labels filed with applicant's application indicate that its product is a raw potato which has been 'crinkle cut' and otherwise prepared especially for making french fried potatoes. While applicant's product and opposer's dry cereal are specifically different grocery items, *they are usually purchased by the same class of purchasers in the same stores, and, hence, might be regarded as emanating from a common source if sold under the same or similar marks.*"

"The instant marks resemble each other to the extent that they comprise or include the term 'KRINKLES'. *Considering, however, the nature of the term 'crinkle', as applied to french fried potatoes, it is believed that purchasers would assume that 'KRINKLES', as used by*

*applicant in the expression 'E–Z KRINKLES', has reference to or suggests a french fried potato product which has been cut or sliced in a crinkly manner rather than another product marketed by opposer.* Under these circumstances, it is concluded that confusion, mistake or deception of purchasers is not likely to occur." (Italics supplied.)

While we appreciate the "crinkled" nature of applicant's goods, we are unable to agree that that single factor is sufficient, in view of the other facts here, to preclude a likelihood of confusion within the meaning of Section 2(d) of the Lanham Act.

Even if there were doubt on that score, we would feel obliged to resolve it in favor of the first user and against the newcomer. Carlisle Shoe Co. v. Societe Anonyme: Roger Fare & Cie, 278 F.2d 519, 47 CCPA 966.

Under such circumstances, we must reverse the decision appealed from.

Reversed.